1561.41, Clarence D. Schreane v. David Ebbert Wharton, oral argument not to exceed 15 minutes per side, this is Zenaida Lockard for the petitioner and appellant. May it please the court, opposing counsel, my name is Zenaida Lockard and I represent the appellant Clarence Schreane. I'd like to reserve three minutes for rebuttal, please. Very well. Your Honor, there's three primary reasons that it's evident that Mr. Schreane was in custody. And those three primary reasons are the fact that the police made a tactical decision to move him to a police station before questioning him, the fact that he was denied the right to counsel after he requested it, and the fact that there was a prolonged interrogation in this case which ultimately wore the will of Mr. Schreane down and led him to confess. And looking at the record, the court has to make a determination under Miranda whether or not... Let me just start with the last one because I'm just curious about this. He requested this meeting, right? That's correct. And he requested the meeting because he wanted to unburden himself with the fact that he was involved in this. He requested the meeting. I think there is some things in the record that say that he ultimately wanted to unburden himself, but he also requested the meeting he indicated because he was hoping to get some benefit by cooperating with the police. Right, sure. He's going to do this either because he's going to feel good about himself or he's going to get something or both. Correct. The point is, I mean, the curious thing I think is you say that the prolonged nature of this custody, which really wasn't that long in the bigger scheme of things, overbore his will. Well, his will was to go in and confess what he did. So I don't understand in the facts of this case how you make that third-prong argument. Well, I think you have to look at what his will actually was. The record is clear that there were several collect calls that were made from the jail to the police station. The police didn't accept those calls. A significant other then went in and told the police, you need to accept this call. And then the police decided after they actually communicated with Mr. Shreen that they wanted to meet with him. So they made the decision to move him from the Hamilton County Jail, which was the first factor I was referencing, to the police station where they then questioned him. And that was a tactical decision on their part. Is that a fatal mistake on their part because he's not in the prison, but he's over in the police station when he requested to talk to him? Yes, Your Honor, I think that it is fatal. What's the clearly established law on that? The clearly established law on that would be Miranda. Miranda goes through great length of discussing custodial interrogation of someone at a police station and why that actual environment is more inherently coercive. It talks about, you know, the defendant being removed from his home turf, from him being removed from the police's. Home turf was the prison. That's correct. Say it would have been okay if that had been done in the prison under all these circumstances then. Well, I won't say that in every case it would be okay at the prison, but I certainly say that there are Supreme Court cases that say it can be okay in a prison environment because an individual in a prison environment can terminate the interview and return back to his cell. I think the case on that, the leading Supreme Court case on that is the Howe v. Fields case, which talks about the individual who was removed to a different room and could still go back and retire to his cell. Here, Mr. Shreen could not retire to his cell. He was taken by the police to the police station and was forced to stay at that station until they finished questioning him. And how he couldn't just get up and say, I'm done with you guys, and walk out and go back to another part of the prison, if I remember right? Wasn't he in a locked room and there was a guard there and he had to say, I'm done talking, take me back? He wasn't free to walk around, if I remember right. I think the distinction that they made in Howe was the fact that the officers told him that he could terminate the interview at any time and he was free to leave. There was no such clarification made to Mr. Shreen when he arrived at the police station here. He actually did make one request. He requested counsel. That request was ignored by the police. You don't get counsel until he's in custody for Miranda purposes. Now, I agree it's sort of odd to say that somebody's in custody isn't in custody, but that's what Howe says. Well, Howe said he wasn't in custody because ultimately he was free to leave. In this case, Mr. Shreen was not free to leave. But free to leave in Howe didn't mean you could just say, I'm out of here, get up and storm out and go to some other place in the prison. You can't just walk around places. Yes, but you actually have the option to call on someone else outside of the officers who brought him to be questioned. He could have called on a guard and said, CO, I'm done, I want to go. And he could have ceased questioning at this time. Mr. Shreen didn't have anyone else. What establishes that he did or didn't have that same right here to say, hey, it's been fun, I'm done talking to you guys, put me in the car, take me back to jail? Well, I think the record establishes that it was the officers who made the decision to move him to the police station. At his request. He didn't request to go to the police station. He requested to talk to the officers. Okay, so they decide they want to do it at their place. We got that. So what establishes in this case, to distinguish it from Howe, that he couldn't exercise the same rights that the prisoner in Howe had to say, I'm done, I want to go back? Well, I think it's what Miranda talks about, and it's the fact that he's removed from anyone that he otherwise has access to. So at the prison, you have access to COs, you have access to other individuals who can control your movement. In this particular case, his freedom of movement under Miranda was restricted because the only people who could control that were the officers who were interrogating him. They were the ones that removed him from the jail. They were the ones that brought him to the police station. They were the ones that would have ultimately made the decision to take him back. Did Miranda ask to be interrogated or say I've got some information and they came to him or he came to them? It's not the same situation, is it? It isn't the same situation when you volunteer information. That's correct. Your client bugged the police to let him come in and called them up several times and had to send somebody else to tell them, right? Well, Edwards clarified that situation and indicated that when an individual invokes counsel, even if they've made voluntary statements, questioning has to cease, and that's what happened in this case. Mr. Shreen, immediately upon finding out that they told him when he came in, they said we think the shooter is this bicycle bandit. We don't think the shooter is you. When he heard that, when he was in an environment where there were three officers who brought him to a different location, when he heard that, he invoked the right to counsel. He asked for an attorney. The officers told him you don't need an attorney. I think the record says they basically ignored that request. But the fact that they told him he wasn't under investigation or consideration, they actually thought it was somebody else, that points towards him not being in custody for Miranda purposes, not being in custody. Well, I don't think that the standard is from what the officers actually say. When they were talking to him, they were trying to get out of him the information that he knew. Here's my point. If they thought that he was actually involved in this crime and brought him over to a different facility and questioned him against his will, that would be a different case. Here, they didn't even think he was a suspect, and they simply respond to his suggestion that he has some information, whatever that may be. So when they tell him they think it's the bicycle bandit, it seems to me that's an indicia he's not in custody for Miranda purposes, rather than the reverse that you're arguing. Well, I think the clarification is they told him that they thought the shooter was the bicycle bandit. They did not indicate that they thought he wasn't necessarily involved in the offense. And I think if you look at the record, and I would point the court to the trial court record, which is Record 20, Addendum 1, Volume 3. When Lieutenant Mathis goes through discussing what he was talking to my client about, he said very early on he realized that Mr. Shreen was not giving an account of someone who was told by a third party, but rather he thought he was giving an account of someone who was there. And he started to question him in a way that would elicit the fact that he was actually there. And that is interrogation, and he is in custody. At that point, he's obviously a suspect, and they did not Mirandize him. We're almost discussing this up to this point like this is a de novo review case. This comes from state court. So, AEDPA deference applies, right? Yes. As you know, we haven't been doing real well lately on AEDPA deference. Again, just two days ago, we get granted, vacated, and remanded in connection with giving AEDPA deference. So, how does that affect whether the state court decision here under Howe was contrary to or an unreasonable application of? Well, I mean, I think if you look at the facts and you look at Miranda, I mean, Miranda is the leading case. That was the case that was controlling at the time that the state court decision came out. It's very obviously an unreasonable application of the established law at the time. Because under Miranda, there is pages where they talk about the inherent, you know, reason that a police station is coercive and the reason that police choose a police station to question someone, the fact that you're removed from support, the fact that you're removed from the outside community, the fact that you're one-on-one. But just as I asked you, Miranda deals with somebody that's coming from the outside into a custodial setting. This is a case of the odd facts of somebody already in custody simply being removed from one custodial location to a different custodial location. And Howe says that's not custody. Well, Howe says that's not custody because he was still within his home institution. There are cases that talk about, you know, even if you're in custody on a separate offense. You just keep talking about whether in defining what's in custody, the other criteria to be applied on the Howe versus Fields, which is whether the person is put in handcuffs and the tone and duration of the interrogation, the other criteria that's supposed to be considered in deciding if the Miranda warning is needed or whether the man's in custody. We're not talking about any of these other circumstances. Well, Your Honor, I can certainly address the Howe case. I would first note for the record I know that the district court relied on Howe and the factors outlined in Howe, but I would highlight for the court that Howe wasn't actually decided at the time that the state court issued its decision. So under AEDPA, it wouldn't actually be a controlling case in this particular circumstance. But if you look at those – there's epideference, but it still applies to our decision now. If you look at those factors, Your Honor, I would submit that all of those factors lean towards Mr. Shreen's position, that you talk about the length of the questioning. In this particular case, the court indicates that he's questioned for over four hours. He's questioned well past midnight before he is actually Mirandized. But in Howe, the man was questioned a lot longer than four hours. I mean, you know, all these – there are lots of factors that are mixed up here. Well, there's other factors in Howe that they also look at the statements made during the questioning, whether he was restrained during questioning, whether the suspect was released after questioning. In terms of the statements made during questioning, he obviously made several incriminating statements prior to them Mirandizing him, and those are outlined by the district court in its decision. Whether he was restrained during questioning, I mean, physical restraints, the record is silent as to whether or not he was actually wearing handcuffs. Logic would tell someone that to be removed from a jail to a police station, he would have had to have been in handcuffs at some point in time. Whether or not those were removed at the station, you don't know. But you do know that he was restrained in the sense that his movement was restrained. He couldn't leave from that location without having these officers who brought him there take him. And then the final factor in Howe is whether the suspect was released after questioning. He was taken back to his location. So obviously that – They couldn't have released him at all, couldn't they? I mean, they could just take him back to the jail. Correct. They couldn't fully release him. And he must have not been very convincing because they didn't charge him for a long time, right? Three years or something like that. That's correct. Your Honors, I see my time is up. Thank you. Thank you. May it please the Court, Mike Stahl for the Respondent. The State Court's rejection of the Petitioner's claim that he should have been Mirandized when he first spoke to police was not an unreasonable application of any clearly established federal law. The Petitioner's argument today relies primarily on Howe's versus Fields, which as this Court has recognized was not in effect when the State Court gave its decision. The Petitioner does not argue that a deference should not apply. It does apply in this case. The cases that the State Court did apply properly, Miranda versus Arizona, Edwards versus Arizona, Rhode Island versus Ennis, all support the State Court's recognition that the Petitioner was not under custodial interrogation at the time he spoke to police. The facts in this case demonstrate that the Petitioner initiated contact with the police. As this Court has previously recognized, he was moved to the location where the detectives who were investigating the cold case were so that they could speak with him. When they spoke with him, he was not a suspect as Detective Mathis testified to. He was not accused of anything as Detective Mathis testified to. There's nothing in the record demonstrating that he was under Miranda custodial interrogation at that time. After talking to him, the time period that the Court alludes to, the four hours, is explained by Detective Mathis. He wasn't even there when the Petitioner first arrived. He was out eating with his wife. It took him an amount of time to finish dinner, to go home and change, to come back to the police station. When he got there, he testified that the Petitioner had a number of differing facts when it came to what he understood about the cold case. It took some time for them to go through those facts, to understand who the Petitioner was, what he knew. And to the Petitioner's argument that they didn't need to transfer him or talk with him after he initiated conversation saying, I have information about this cold case, as the State Court pointed out, the police would have been derelict in their duty to not reach out to this witness to find out what they knew. This was an eight-year-old case. They had no suspects. They had no idea what was going on with the robbery, with the murder. When someone calls up and says, and as Detective Mathis testified, makes an extreme effort to contact the police, they have a duty to reach out to that person and find out what they know. That's exactly what happened in this case. But you're kind of conflating things there, aren't you? The fact they had a duty to investigate really doesn't address whether they did or didn't have a duty to give Miranda warnings. No, that's right, Your Honor. But the point is that under Edwards v. Arizona, he initiated contact with the police. So when he initiated contact, he was not a suspect. He was not an accused. And as the point recognized, the police had a small basis for understanding that possibly the Bicycle Bandit was involved in the murder. But they didn't know who the Bicycle Bandit was. They didn't suspect that the petitioner was the Bicycle Bandit. He was asked whether he'd ever been questioned about this in the eight years. He said no. So when he reached out and said, I have information about this, under Edwards v. Arizona, which the state court relied on, it was not at that time that he was subject to Miranda warnings. When the police were able to determine that his involvement included more than just being a witness, first he told police that someone else had told him what happened at the murder. Then through further questioning, it came to light that he was a witness, he said. And then upon further questioning, he said, I may have been involved. It was at that point that they did Mirandize him, that they did take his taped confession. Because that's another important point to remember about this. The claim is not that his confession should have been excluded because he wasn't Mirandized. The claim is that his confession should have been excluded because he wasn't Mirandized soon enough. But as we can see from the facts in the case, to which the petitioner has no adverse facts, he was not an accused who was subject to custodial interrogation when the police first interviewed him. So under the state clearly established federal law, there is nothing that would show that the state court's determination on this claim was improper, was contrary to, or an unreasonable application of any of that. If the court has no further questions? All right. Apparently not. Any rebuttal? Just out of curiosity, when are you saying that the police were required to give him the Miranda warnings? When he first showed up at the new location, or somewhere between when he showed up and when they actually gave him the warning? Well, I think reasonable minds can probably differ on that. I mean, my position would be that they were required to give it to him initially. But I think if you also look in the record, I would say they were certainly required to give it to him as soon as they ascertained that they thought he was a suspect. And the record makes very clear that that was almost immediate. If you look at the trial transcript, and I'm going to read this quote because of what opposing counsel says, Lieutenant Mathis says, and this is Record 20, Addendum 1, Volume 3, Page 85. Immediately in this case, he was talking things that we knew someone involved would be only one of the people to know. It was things that we knew about that scene that were very critical, but not well known outside of the investigation. And then he goes on, on Page 86, this goes on for hours. Ultimately, he began to acknowledge that these things weren't things that he was just told. These were things that he actually saw, or was a part of, or in several instances things he actually did. So consistent with what your fellow counsel said, he says he knows things, but he starts out saying that he had been told things by somebody else, presumably that somebody else having been involved, right? Correct. Now, does that make him a suspect at that point when he says, when he describes the source of his information as coming from somebody else? No, I think he became a suspect when the police realized, as he was talking, that there was no way that he would have known this information from someone else. So it's not in the beginning then. It's somewhere along the process. Well, I don't think that the rule of law is whether or not he was in custody. So whether or not he would have reasonably, a person in his position would have reasonably felt they were free to leave. But you just started out answering my question by saying he was in custody when he became a suspect. That's what you said a minute ago. Well, then I misspoke. Because the rule of law is that he is in custody at the point that he does not feel he is free to leave. And he was not free to leave when he was removed from the Hamilton County Jail and taken to the police station for questioning. Now, the police and Lieutenant Mathis makes this big, you know, bright line about, we Mirandized him as soon as we knew he was a suspect. That's not what the status of the law is. The rule of law is that he has to be in custody at the time. But in terms of talking about, you know, you asked the question of when he should have been Mirandized. No matter where you put it, it should have been well before they actually did Mirandize him. Whether it's initially arrival at the police station or as soon as they knew he was a suspect. Lieutenant Mathis says immediately upon talking to him, we realized that he knew things that he should not have known unless he was there. But you're saying that he knew things that he wouldn't have known. So that piques their interest. But then you say, so therefore he's a suspect. But on the other hand, you say, you concede that he's saying he got the information from somebody else. If in fact he got it from somebody else, then he's not a suspect. Yeah, but I think that you look at whether or not the, again, I don't believe that the rule of law is whether or not he's a suspect. So we're trying to parse this. This is the point. And was the state court unreasonable in how they parsed this in determining when Miranda was due and that it wasn't due until it was actually given? Yes. And Miranda was due upon him being in custody. And he was in custody when he arrived at the police station. I see that my time is up. I would ask the court to grant Mr. Shreen's request for relief. All right. Thank you. And the case is submitted.